MARSHALL BRACE *vs.* ALLEN S. YALE.
ALLEN S. YALE *vs.* MARSHALL BRACE.

The owner of a mill on a stream who has a right to draw down from his reservoir more or less than the natural flow of the stream, at his pleasure, to work his mill, is entitled to relief in equity against the owner of an intermediate dam which delays the passage of the water by the time necessary to fill the defendant's pond, and by its leaky condition allows the water to run so to waste, when the plaintiff's mill is not at work, as to make it necessary to fill the pond from day to day.

If the use of the water of a stream in its natural flow would be of no value to the owner of a mill situated between the reservoir and the mill of another who has a prescriptive right to draw from the reservoir, for the purpose of working his mill, more or less than such natural flow at his pleasure, the former is not entitled to relief in equity against the latter for making a different use of the water, by raising and tightening his dam and by different machinery at his mill, from that which he made while gaining his prescriptive right.

Two BILLS IN EQUITY between the parties to the actions at law reported 4 Allen, 393, 10 Allen, 441, and 97 Mass. 18. Issue was joined, in each, on the answer; they were referred to a master to take and report the evidence; and were heard together, on the pleadings and master's report, by *Colt*, J., and by him submitted, as follows, to the determination of the full court.

" Brace, in his bill, in substance complains that Yale has erected obstructions between the plaintiff's ancient mill on Marsh Brook and the plaintiff's reservoir dam at the head of said brook, by which the flow of the water is at times obstructed and retarded, and at other times the water is suffered to flow in quantities so increased as to run to waste at the plaintiff's mill, in violation of his prescriptive rights as ascertained and established by a judgment in his favor in this county in 1866, in a suit between these parties.

" In the other suit Yale's bill charges, in substance, that Brace in 1863 increased the machinery at his mill, raised the dam, put in additional wheels requiring more water, and so uses his mill, and the reservoir in connection with it, as to deprive Yale of the reasonable use of the stream consistently with the rights of Brace so acquired by prescription; and particularly, that Brace is in the practice of opening the reservoir gates and letting off large quantities of water which flow by without benefit to Yale's mills situated between Brace's dam and the reservoir, and that at other times Brace permits a stream of water to flow from the reservoir so small in quantity as to be useless in driving Yale's said mills.

" The writs and all the papers in the two cases of *Brace* v. *Yale*, reported 4 Allen, 393, and 10 Allen, 441, with the judgments, were put into the case; and may be referred to, if necessary. It was denied that the statement of facts agreed upon by the parties in the last named case was conclusive upon them now; but, whether so or not, I do not find upon all the evidence anything to vary the facts as then agreed.

" All the evidence satisfies me that the prescriptive rights which Brace has acquired were so acquired when his privilege, and the reservoir in connection with it, was used for the purpose of running a common wood saw-mill where his present mill is situated. During the period of such acquisition the water of the brook, as it flowed from the reservoir down to Brace's mill, was used to a considerable extent by intermediate riparian proprietors for a period of more than twenty years for the purpose of propelling their mills situate where Yale's mills now are. The owners of the Brace privilege exercised entire and exclusive control over the flow of the water, which was regulated (except in times of high water, when the reservoir was full and overflowing,) by the gates at the reservoir dam; and the owners of .he Brace privilege used the water at such times and in such quantities as it was required to drive the saw-mill, the requirements of the mill being the measure of their use when there was a supply to be had, but not interfering with the gates of the reservoir dam when the natural overflow of the dam from high water was sufficient for the wants of their mill.

" Brace became purchaser of his mill and privilege in 1860 and in 1863 made improvements in his dam, stopping its leaks and materially increasing its capacity and height. He also added other machinery, put in an additional water wheel, and now uses the mill with an upright saw and circular saw for sawing logs, and small circular saw for sawing wood and lath, and for a grist and cider mill. I was satisfied that, after Brace's improvements and before the time of the filing of Yale's bill, Brace, when driving only a portion of his machinery, required less water than was used to drive the old saw-mill during the time when his prescriptive rights were gained; and accordingly, in times when there was no overflow in the reservoir, he was in the habit of drawing the water, after the ponds were filled in the morning, in a smaller volume from the reservoir than was formerly required to run the old saw-mill. This was partly because less power was required to propel only a portion of his works, and partly because by the repairs on his dam much water that before wasted by leakage was saved. The water, when used in this diminished quantity by Brace, was insufficient, as it flowed past the mills of Yale, to be of any use in driving them; and the water, when so used, was valueless to Yale.

" I find that Marsh Brook, in its natural and ordinary flow, when not supplied by heavy rains or melting snow, and with no reservoir to collect the water, is a small and insignificant stream, and of little or no use for mill purposes; and I find from the evidence, that the stream (except in times of high water) without the reservoir of Brace and in its natural flow would be no more useful to the mills of Yale than it is under the use made of it by Brace above stated, and that, if the reservoir were now removed, there would be the same or a greater insufficiency of supply for Yale's mills.

" I find that during the period in which Brace's prescriptive rights were acquired, whenever water was drawn from the reservoir for the use of the saw-mill it was drawn in such quantities as to be available for driving the mills now owned by Yale; and that, as Yale's mills and dams were then constructed and arranged, such use could profitably be made of the water, with-

**out** materially interfering with or impeding the flow of the water to Brace's mill.  But I find that in 1831 Yale became the owner of his lower or oil mill property ; that in 1854 he materially enlarged his dam for that mill, building it of stone and increasing its height ; and that in its present leaky condition it would now constitute a material impediment to the uniform and rapid flow of water from the reservoir to Brace's mill, even if Brace in his use of the water is to be governed in respect to volume and quantity by the use made of it by the old saw-mill for the above stated period of prescription.  The oil mill dam in its present condition requires to be wholly or in part filled each morning to supply the leakage ; and, unless wholly removed, or so repaired as to hold water, it must continue to constitute the impediment and obstruction described.  The mill connected with this oil mill dam has not been used, or at least for only a part of one day, since the decision in the last case of *Brace* v. *Yale,* but the disuse of the dam does not obviate the difficulty.  It was proved that this obstruction delayed the flow of the water, from the necessity of filling it up, from one to two hours, according to the quantity drawn from the reservoir, and that the quantity of water which the dam contained leaked away in the night time, after Brace's mills were stopped and the reservoir gates were closed, and was so lost and wasted to Brace.

" If, upon the whole case and the facts thus found by me, the court should be of opinion that in *Brace* v. *Yale* Brace is entitled to relief, then the court may decree that the obstruction caused by the oil mill or lower dam of Yale shall be removed by removing the dam, or otherwise obviated by so repairing said dam, with its flumes and waste ways, that it shall remain continually full, requiring no delay to fill it when the gates of the reservoir are open.  And if, under the facts found by me, in *Yale* v. *Brace* the court are of opinion that the defendant is confined to use the water in volume and quantity as it was used by the old saw-mill during the period of prescription, then I am of opinion that a decree should be entered restraining Brace to such use.  I report the case to the full court, however, for such final or further action as to the court may seem proper."

*I. Sumner & H. J. Dunham*, (*J. Dewey, Jr.*, with them,) for Brace.

*H. W. Bishop*, (*M. Wilcox* with him,) for Yale.

HOAR, J.   There is nothing in the facts found and reported in the first suit, which, in the opinion of the court, can change the rule governing the rights of the parties, which was applied in *Brace* v. *Yale*, 10 Allen, 441, and *Same* v. *Same*, 97 Mass. 18.

The right of the plaintiff, acquired by prescription, as founded upon the facts agreed in *Brace* v. *Yale*, 10 Allen, 441, was a right to retain the water in the reservoir, and let it down in such quantities and at such times as he chose, for the purpose of working his mill.   Although the defendant might derive some advantage from it as it passed his mill, he had no right to interfere with the time or manner of letting it down.   He had no property or right in the reservoir, and could not lawfully obstruct or delay the passage of the water which came from it.   But it was found in the action at law, and is again found, that the defendant's dam in its present condition constitutes such an unlawful obstruction.   It delays the passage of the water by the time which is required to fill the defendant's pond; and by its leaky condition it allows the water to run to waste when the plaintiff's mill is not in operation, so as to necessitate a repeated filling from day to day.   This invasion of the plaintiff's right is found to exist to the prejudice of the plaintiff's unquestioned use of his mill, and without reference to the alterations and improvements which he has made.

In *Brace* v. *Yale*, 97 Mass. 18, it was decided that the rights which the plaintiff had before the alterations in his dam are not affected by them; and that the defendant was answerable in an action at law for holding back or letting down water contrary to the rights established by prescription.   The remedy in equity must depend upon the same principles.   The plaintiff is therefore entitled to the relief which he seeks.

*Decree for the plaintiff accordingly, with costs.*

In the other suit the question is raised whether the fact that the defendant, by raising and tightening his dam, and putting

different machinery into his mill, makes a different use of the water from that which he made while he was gaining his prescriptive right, gives the plaintiff any right to have the flow of the water from the reservoir regulated for his benefit. And we cannot perceive that it does. The acquisition of the prescriptive right to use the reservoir by the defendant certainly gave the plaintiff no right in it. The plaintiff might use it or not at his pleasure. If there were no prescriptive right to use the water in the way it is now used, still the only right of the plaintiff would be to the use of the water in its natural flow, and this the report finds is of no value to him. He is not injured by being deprived of it, and is not therefore entitled to any equitable relief. His real ground of complaint is, that the defendant does not use the prescriptive right to his advantage, which he is not bound to do. He may omit to exercise it entirely.

*Bill dismissed, with costs.*